Application of A. Cheney GREENE and Evelina S. Greene for an order declaring unreasonable, illegal and void, a certain search and seizure, etc.

Civ. 8957.

United States District Court
W. D. New York.
March 15, 1961.

As Amended March 29, 1961.

Dudley, Stowe & Sawyer, Buffalo, N. Y., (Richard E. Moot, Buffalo, N. Y., of counsel), for applicants.

Neil R. Farmelo, U. S. Atty., Buffalo, N. Y. (C. Donald O'Connor, Asst. U. S. Atty., Buffalo, N. Y., of counsel), for the Government.

HENDERSON, District Judge.

This is an application under Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., for an order directing the Government to return all papers, records, and copies thereof which were obtained from the petitioners on request of the Internal Revenue Service, and restraining the Government from using any information obtained through such papers in any criminal proceeding against the applicants.

A. Cheney Greene was visited by Special Agent Carbone of the Intelligence Division of the Internal Revenue Service on November 18, 1959. This followed an earlier call when the Greenes were not at home, at which time Carbone left an official card announcing his visit and bearing his name and title. Carbone identified himself and his position on meeting Mr. Greene, but did not explain the nature of his duties with the Intelligence Division. The Intelligence Division handles investigations where criminal liability may be involved, but such investigations do not necessarily result in criminal action being taken against delinquent taxpayers.

During the original interview, Carbone asked for and was given detailed information relating to applicants' previous income tax returns and their financial status. It was agreed at the conclusion of the conference that the taxpayers would provide records for purposes of Special Agent Carbone's investigation for the years 1957 and 1958.[1] Shortly after this interview, the taxpayers filed amended returns for the years 1957 and 1958, the 1958 return showing $6,000 more dividend income than had originally been reported.

---

1. Subsequently the period was expanded to include the years 1955 and 1956.

On December 21, 1959, Agent Carbone wrote to Mr. and Mrs. Greene indicating that his investigation could not be completed "until an audit" of the records he had requested at his first meeting with Mr. Greene. In another letter, dated February 1, 1960, Carbone stated that he wished "to audit" the records. Various communications from the taxpayers to Agent Carbone during this period indicated that the records would be ready for his audit in March or April. The records were actually receipted for by the Internal Revenue Service on March 4, 1960.

At no time prior to supplying the records were the taxpayers advised of their constitutional rights or that the records might be used against them in a criminal proceeding. After the possibility of a criminal proceeding was first mentioned to them (by letter from the Internal Revenue Service dated June 2, 1960), the taxpayers consulted counsel for the first time within eight days. The taxpayers now contend that the records were obtained as a result of an unreasonable search and seizure within the meaning of the Fourth Amendment, alleging that the investigation was actually criminal in its inception and that this fact was affirmatively obscured with the intent to deceive the taxpayers, and that the consent given by taxpayers for the production of the records was therefore fraudulently obtained.

The Court has determined, on the affidavits presented on this application, that there is no substantial issue of fact requiring a hearing.

The issue on this application is whether the records provided by the taxpayers were "voluntarily and understandingly given". Turner v. United States, 4 Cir., 1955, 222 F.2d 926, 931. If they were, the application must be denied.

After reviewing the entire record, briefs of counsel, and the applicable cases, I have concluded that the case falls within the rule of United States v. Sclafani, 2 Cir., 1959, 265 F.2d 408, 415:

"The Fourth Amendment does not require more than this, that when his consent is sought the taxpayer be apprised of the government's concern with the accuracy of his reports, and therefore of such hazards as may be incident to a voluntary disclosure."

Mr. Greene was sufficiently "apprised of the government's concern" to consult a part-time accountant the same day as his initial interview and to cause the preparation and filing of amended returns showing a substantial increase of reported income.

Applicants rely principally on the qualification which the court in the Sclafani case placed on the general rule:

"Of course the government's agents may not act so as to obscure the warning inherent in their request for permission to search, as by assuring the taxpayer, in order to quiet his apprehensions, that no proceedings can or even will eventuate, and then rely successfully on the consent so procured." Id., at page 415.

Use of the word "audit" in Agent Carbone's letters did not amount to the affirmative "act * * * to obscure" referred to in Sclafani. His letter of December 21, 1959, referred to the need for an "audit" so he could complete his "investigation". The letter of February 1, 1960, merely stated that he wished to "audit" the records for each of the years in question. This did not imply that the investigation would be limited to civil penalties.

Moreover, the record does not support a conclusion that the word "audit" was used for the purpose or had the effect of quieting apprehensions on the part of the taxpayers. At no time did the taxpayers express any objection to the request for records. The only apparent concern, as appeared in Mrs. Greene's letters of January 5 and 14, 1960, respectively, was that additional time be granted during which the material could be collected.

The records were voluntarily and understandingly given. The application is denied. So ordered.